KNUTE A. RAUNN *vs.* JOHN LEACH.

Submitted on briefs April 4, 1893.　Decided April 25, 1893.

**Service of Summons by Publication.**

The provisions of 1878 G. S. ch. 66, § 65, regulating the service of summons by publication in certain actions brought against nonresidents, were complied with by publishing such a summons in a daily newspaper on Tuesdays, February 7th and 14th, on Thursdays, February 23d, March 2d and 9th, and finally on Wednesday, March 15th.  Each of the six consecutive weeks commenced upon Tuesday, and it was not necessary that the publications should be made at regular intervals of seven days.

Appeal by plaintiff, Knute A. Raunn, from an order of the District Court of St. Louis County, *Calvin L. Brown*, J., made February 25, 1893, overruling his demurrer to the answer.

The plaintiff alleged that he owned the northwest quarter of section two (2) T. 154, R. 45, in Polk county, worth $500.　That the defendant John Leach owned it January 15, 1880, and on that day mortgaged it to plaintiff to secure the payment of $200 and inter-

est, one year thereafter. That the defendant failed to pay and plaintiff foreclosed the mortgage by action in the District Court, and defendant was served by publication of the summons. He did not appear in the action, and judgment of foreclosure was entered on proof of his default, and the land sold by the sheriff, and bid in by plaintiff, and was not redeemed from the sale.

The defendant answered that when the foreclosure action was instituted he was not a resident of this State, that the only service of the summons was by publication in the "Crookston Brodax," a newspaper published daily in Polk county. That the summons was published only in papers issued February 7, 14, 23, and March 2, 9 and 15, 1882, and that defendant had no other notice of the pendency of the foreclosure action; that the court acquired no jurisdiction of that action, and the sale was void.

To this answer plaintiff demurred on the ground that it did not state facts sufficient to constitute a cause of action. The District Court overruled this demurrer, and plaintiff appeals.

*C. M. Simpson,* for appellant.

In the case of *Godfrey* v. *Valentine,* 39 Minn. 336, this court followed *Ullman* v. *Lion,* 8 Minn. 381, (Gil. 338,) and *Golcher* v. *Brisbin,* 20 Minn. 453, (Gil. 407,) and held that if the proof fails to show a publication once in each week, the service is insufficient and the proceeding void. All the law requires is, that the publication be made once in each week, for six consecutive weeks. 1878 G. S. ch. 66, § 65. A week is a period of seven days, beginning with Sunday and ending Saturday. It is also a period of seven successive days. *Ronkendorff* v. *Taylor's Lessee,* 4 Pet. 349.

*White, Reynolds & Schmidt,* for respondent.

1878 G. S. ch. 66, § 65, is substantially the same as the statute with reference to the publication of notices in the Probate Courts. They are grouped together in *Greenwood* v. *Murray,* 28 Minn. 120. In *Dayton* v. *Mintzer,* 22 Minn. 393, this court held that publications on regular publication days, at the rate of one a week, if separated by intervals of a week, are sufficient. In *Godfrey* v. *Valentine,* 39 Minn. 336, this court cited *Hernandez* v. *His Creditors,* 57 Cal. 333, with approval. That case holds that publications must occur with

an interval of not more than one week between them. This very question was, however, passed upon and decided by Judge Blatchford when on the Circuit bench, in the matter of *David J. King et al.*, bankrupts, 5 Ben. 453, and the conclusion reached by him is the same as that for which the defendant contends.

COLLINS, J. In this action, brought to determine an adverse claim made to certain real estate, the complaint and answer disclosed that plaintiff's alleged title in fee depended wholly upon the regularity of the proceedings in an action brought in 1882 to foreclose a mortgage upon the property, executed and delivered to him by the defendant, said action having been brought while the latter was a nonresident of the state, and service of the summons having been made, if at all, by publication. By demurrer to the answer the regularity and sufficiency of these foreclosure proceedings have been assailed at but one point. It stands admitted that the summons was published in a daily newspaper six times, as follows: On Tuesday, February 7th, and on the following Tuesday, February 14th; next on February 23d, and then on March 2d and 9th, each being on Thursday; and finally on Wednesday, March 15th. It will be seen that the third publication was made nine days after the second, while the sixth came six days subsequent to the fifth. Counsel for respondent take the position that, as the first publication was upon Tuesday, each succeeding one should have been on the same day of the week,—that is, the summons should have been published at regular intervals of seven days,—and this was the view, undoubtedly, of the learned judge below when sustaining the demurrer.

The statute which must now be construed, 1878 G. S. ch. 66, § 65, provides that the summons shall be published "once in each week for six consecutive weeks," and the sole inquiry now is as to the absolute necessity of so publishing on the same day of each of these six consecutive weeks. The counsel for respondent, in addition to *Hernandez* v. *Creditors*, 57 Cal. 333, and *In re King*, 5 Ben. 453, cite *Dayton* v. *Mintzer*, 22 Minn. 393, and *Greenwood* v. *Murray*, 28 Minn. 120, (9 N. W. Rep. 629,) in support of the order appealed from. In the opinion in *Dayton* v. *Mintzer* and in the syllabus to *Greenwood* v. *Murray* may be found sugges-

tions that the statutory requirements providing for the publication of certain legal notices could only be complied with by separating the several weekly publications by intervals of exactly seven days. In neither of these cases was there a suggestion of this character, and the suggestions in reference to it were purely *obiter*. It follows that the question must be treated as an open one in this jurisdiction. A week is defined by all lexicographers as a period of time commencing with Sunday and ending with Saturday night, and also as a period of seven days' duration, without reference to the time such period commences. Therefore it need not commence, necessarily, on the morning of the first day of what has been denominated as the biblical week, but on a later day. In the case at bar the summons was published for the first and second times on the third day of the biblical week, and thereafter it appeared upon either the fourth or fifth days of such week, a Sunday intervening between each publication. It was also published once in each of the six consecutive weeks commencing on the day of its first appearance in the paper, Tuesday, February 7th. We are unable to hold that the statute was not complied with. The summons appeared once in each of the six periods of seven days' duration beginning upon and which followed consecutively the date just mentioned. We construe the statute as authorizing just such a publication. The statutory week must commence upon the day of the first publication, and there is nothing in the language used which would justify the conclusion that because the publication must be "once in each week" the day of the first publication must determine the day on which each subsequent publication is to be made, and that exactly seven days must intervene between each. The following cases warrant our conclusion, and some of them go much further than would be necessary to uphold the validity of the service in question: *Ronkendorff* v. *Taylor*, 4 Pet. 349; *Steinle* v. *Bell*, 12 Abb. Pr. (N. S.) 176; *Wood* v. *Knapp*, 100 N. Y. 109, (2 N. E. Rep. 632;) *Bachelor* v. *Bachelor*, 1 Mass. 256; *State* v. *Yellow Jacket Silver Mining Co.*, 5 Nev. 415.

Order reversed.

VANDERBURGH, J., absent, took no part herein.

(Opinion published 54 N. W. Rep. 1058.)

Application for reargument denied May 16, 1893.