THE AETNA CASUALTY & SURETY COMPANY v. THE EQUITABLE SURETY COMPANY AND ANOTHER.[1]

April 9, 1920.

No. 21,837.

State timber permit — assignment — liability of surety of assignee primary.

As between the surety on the bond given under section 5277, G. S. 1913, upon obtaining a permit to cut and remove state timber, and the surety on the bond given under section 5279, upon an assignment of the permit, the latter surety is primarily liable for the failure of the assignee to pay the state for the timber he cut and removed.

Action in the district court for Hennepin county for a decree requiring the attorney general to apply the sum of $6,902, or so much thereof as might be necessary, deposited with him by defendant company, toward the payment and discharge of the judgments against that company which are mentioned in the second paragraph of the opinion, and to apply so much of the sum deposited with him by plaintiff company as might be necessary to pay in full the balance due the state on its judgments against plaintiff company, and then to return to plaintiff the balance remaining in his hands. The attorney general filed his answer and prayed the court to direct that the money deposited with him be paid into court, and that the court determine the rights and equities of plaintiff company and defendant company and the application of the money. The Equitable Surety Company filed its answer and cross bill, and prayed the court to direct the attorney general to pay out the money deposited with him by plaintiff toward the payment of the judgments against plaintiff and then to satisfy the judgment against defendant

[1] Reported in 177 N. W. 137.

and to return to defendant company the balance of the amount deposited by it.

Plaintiff's motion for judgment on the pleadings and stipulation was granted and the court, Hale, J., found defendant surety company primarily liable for payment of the claim of the state for timber cut under the various state permits mentioned in the complaint, and directed that the moneys deposited by it with the attorney general be first applied to the satisfaction of the claim of the state, and, if the deposit was insufficient to pay the claim of the state in full, that the remainder should be paid from the moneys deposited with him by plaintiff company.

From the judgment entered on an order granting plaintiff's motion for judgment on the pleadings, defendant Equitable Surety Company appealed. Affirmed.

*Fowler, Schmitt, Carlson & Furber,* for appellant.

*Clifford L. Hilton,* Attorney General, and *James E. Markham,* Assistant Attorney General, for respondent Hilton.

*Dille, Hoke, Krause & Faegre,* for respondent company.


HOLT, J.

The appeal presents the question whether, as between the surety for the purchaser of a state timber permit and the surety for his assignee, there is a primary liability. The court below held that, as between the two, the surety for the assignee who obtained the timber, but failed to pay the state therefor, was primarily liable.

In October, 1914, R. Sperling procured four permits or contracts from the state to cut and remove certain timber from its lands during the logging seasons of 1914, 1915 and 1916, at specified prices to be paid therefor. To secure performance he, with respondent as surety, executed and filed proper bonds as provided by section 5277, G. S. 1913. Shortly thereafter, and in December, 1914, Sperling, without having attempted to cut or remove any of the timber, assigned the permits to J. A. McDevitt, who gave the bonds provided for in such case by section 5279, appellant being his surety. McDevitt entered upon the lands and cut and removed the timber, but did not pay the state in full. The state thereupon brought separate actions against the parties herein upon the several bonds and recovered against each full indemnity.

There were separate appeals, but the recovery was sustained in each instance. State v. Equitable Surety Co. 140 Minn. 48, 167 N. W. 292; State v. Aetna Casualty & Surety Co. 140 Minn. 70, 167 N. W. 294. Thereafter, failing to agree as to who should satisfy the state's claim, the Aetna Company brought this action against the Equitable Company to determine the controversy; each company in the meantime depositing with the attorney general the full amount for which the state secured judgments. The attorney general is made a party defendant, but disclaims any interest in the outcome, he having authority under the deposit agreement to' apply the moneys deposited according to the final decision herein.

The appeal is from the judgment granted on the pleadings and a stipulation of facts. The main contention for a reversal of the judgment is predicated on the fact that respondent, the Aetna Company, bound itself for the performance of the permits not only by Sperling, but by his assign as well, and also upon the allegation in the answer, which must be taken as true on the motion for judgment on the pleadings, that appellant, the Equitable Company, executed its bonds in reliance on the fact that respondent, the Aetna Company, had already delivered its bonds conditioned as stated, and hence it (the Equitable Company) intended and understood that it would become secondarily liable to the bond of respondent.

Giving the broadest construction possible to the answer in respect to appellant's intentions and understanding in becoming McDevitt's surety, it does not go to the extent of alleging the entering into any special agreement or understanding with the state or the respondent that the latter's liability should be primary to appellant's. At most the answer in this respect is that, from the provisions of the law applicable to state timber permits and the fact that respondent's bond was first executed and was conditioned for the performance of the permit not only by Sperling but by his assign, appellant understood the law to be that in executing the bonds for McDevitt it became secondarily liable.

The bonds executed by respondent are conditioned "that if the above bounden R. Sperling * * * his heirs * * * and assigns, shall well and truly perform * * * each and all of the conditions * * * specified" in said permit * * * then the above obligation

to be void." This conforms to section 5277 G. S. 1913, and also is an attempt to incorporate in the instruments the effect the last clause of section 5279 gives to them. Said section 5279 reads: "No assignment shall be operative without the approval of the auditor, who, if he shall approve the same, shall endorse his approval thereon, and record the assignment in his office. Before any such approval, the assignee shall give to the state a bond, which shall be substantially in the form and subject to the rules providing for the bond to be given by the original purchaser, but the original bond given by the purchaser, and any bond given by any prior assignee, shall remain in full force." These statutory provisions are for the protection of the state, and are not designed to regulate the rights as between the original permit holder and his assignee or their respective bondsmen.

The question presented does not seem difficult of solution. Sperling, without cutting or removing any timber under the permits, transferred his interest in them to McDevitt in the manner and form permitted by the law. McDevitt cut and removed all of the timber, but failed to pay for it. Equitably he, and not Sperling, should have settled with the state therefor, according to the terms of the permit. Had Sperling been compelled to pay the state, he would, no doubt, have had a cause of action against McDevitt for the amount paid. But had appellant, McDevitt's surety, been compelled to pay, could it possibly be maintained that it would have had any cause of action against Sperling? The surety holds the same relation as the principal in respect to the obligations of a bond, hence the equitable considerations which should determine the primary liability as between the principals ought to be applied as between their respective sureties. As between themselves appellant and respondent cannot be regarded as cosureties, for, while they became sureties for the same obligation to the state, it was not strictly for the same persons, Sperling's acts and omissions not being covered by appellant's bond. It is evident that, in order to transfer not only the benefits but the burdens and obligations of the permits to McDevitt, appellant executed the bonds. The wording of the bonds executed by appellant clearly indicates that McDevitt stepped into Sperling's shoes, so that Sperling should be relieved from performance, for, after identifying the permit this follows: "Which on the part and be-

half of said J. A. McDevitt, his heirs, executors, administrators, successors and assigns, ought to be performed, fulfilled and kept, according to the true intent and meaning of the same, then the above obligation to be void, otherwise to remain in full force." Furthermore, the giving of the bonds by the appellant, so as to enable McDevitt to procure assignments of the permits, gave rise to the causes of action upon which the state obtained the judgments herein involved. Hence, equitably it should be held primarily liable, and not Sperling's surety. Opp. v. Ward, 125 Ind. 241, 24 N. E. 974, 21 Am. St. 220.

Appellant cites Pope v. Hoefs, 140 Minn. 443, 168 N. W. 584; Harris v. Warner, 13 Wend. 400; Chapeze v. Young, 87 Ky. 476, 9 S. W. 399, and other authorities to the effect that a surety may by words added to his signature, or by express agreement, limit his liability on commercial paper to that of surety for all preceding signers thereon, without regard to whether any of the latter be also sureties. Such is no doubt well established law, but is not applicable to the facts of this case. Young v. Shunk, 30 Minn. 503, 16 N. W. 402, and U. S. Fidelity & Guaranty Co. v. Naylor, 237 Fed. 314, 151 C. C. A. 20, also cited, relate to bonds given at different occasions to secure performance by the same party of the same duty. The court held the sureties on such separate bonds cosureties. But in the case at bar the one bond was for McDevitt alone. And we consider McDevitt and his relation to Sperling and his bondsman such that in all equity he, McDevitt, should hold them harmless, and so should appellant who vouched for McDevitt, to the extent of its bond.

The conclusion reached that appellant is primarily liable as between it and respondent determines also that they are not cosureties.

The judgment is affirmed.